IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 4:20-CR-00205 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DEFENDANT'S SENTENCING BRIEF |
| | ) | |
| CHELSEA GLESS, | ) | |
| | ) | |
| Defendant. | ) | |

The government claims that Chelsea Gless "defrauded at least 71 clients of her business, Royal Metals Group, out of nearly $3 million dollars over the course of approximately four years." Chelsea Gless was a shareholder and manager of the business in name only. In reality, she was the office manager, secretary and clerk. Royal Metals Group (RMG) was established by her now deceased husband, Richard Gless, and John Clark in 2009. Mr. Gless and Mr. Clark were already partners in an insurance agency when RMG was formed. Mr. Gless became involved in marketing precious metals for customers of the insurance agency. RMG initially offered its services, for a commission, to their insurance customers to buy or sell gold or silver on their behalf. The concept expanded when Mr. Gless and Mr. Clark used their insurance industry contacts to create a network of insurance agents and investment advisors to encourage their customers to invest in precious metals and if the transactions were completed through RMG they were given a commission.

When RMG was formed Mr. Gless initially placed "his" 50% share in the name of his much younger spouse, Chelsea Gless. The other 50% was in the name of his insurance business partner, John Clark. In retrospect, it appears that Mr. Gless and Mr. Clark established and ran the business in a fashion that would use Chelsea Gless

as the face of the business and nominal 50% owner. At a later date, Mr. Clark and Mr. Gless arranged a third owner, Barry Dolan, so that Mr. Clark and Mr. Dolan would have on paper the controlling interest in the business.

Chelsea did not have a business background. When she met Mr. Gless, she was attending a community college and contemplated a career in the medical profession. After marrying Mr. Gless, she worked for Mr. Gless at the insurance agency. Mr. Gless recommended that she obtain her insurance agent's license from the State of Iowa for some insurance products. She obtained her license for health and life insurance lines but not variable annuities or investments. She did not have training or licensing to sell variable annuities or be an investment advisor. She did not have a background concerning brokerage or precious metals or investing. Virtually all of the customers transacting business with RMG group were represented by their own investment advisors or insurance agents who advised their clients and customers to invest in or sell precious metals. Those investment advisors or insurance agents, generally part of a network of marketers established by Mr. Gless and Mr. Clark, then placed their clients' orders for precious metals through the Royal metals group and in turn they received substantial commissions. See, for example Exhibit J for trades placed by an investment advisor for several different clients in August, 2014 and the commissions paid to the advisor and the "marketer" for RMG.

Chelsea Gless did not advise the customers of RMG metals to buy or sell precious metals. The vast majority if not all of the customers were represented by licensed insurance agents or investment advisors who occupied a position of trust with respect to their clients. RMG and Chelsea Gless did not know the financial circumstances of the persons placing orders. Presumably the agents and investment advisors for the

customers were aware of their clients' financial resources, investment objectives, willingness to accept risk, the need for liquidity and the timeframe of the investment. It is startling that any investment advisor would advise any client to invest their entire retirement in precious metals. Chelsea Gless did not provide investment advice to their customers.  Chelsea attempted to fulfill orders placed by the customer's advisors. She was no more in a position of trust with respect to the customer than any other merchant. Presumably the customer's agents and financial advisors are or should be familiar with the process of buying and selling precious metals and they are not in a position of trust with respect to RMG.

For persons desiring to purchase or sell physical gold or silver it seems unusual that the transactions routinely occur at jewelry stores, pawn shops and little-known firms such as Bullion Works. Investment firms such as Goldman or Wells Fargo offer exchange traded funds and other investment vehicles for those desiring to invest in gold and silver without physically possessing the gold, either personally or at a depository for precious metals. RMG and many other firms try to supply these services and many have failed. For a period of time RGM appeared successful in the sense that the gross proceeds of the business were increasing from $7.8 million gross receipts and $317 thousand profit in 2010, the first full year in business, to $25 million and $779 thousand profit in 2012, the year Mr. Gless died. See Exhibits A, B, C and H. A closer and more sophisticated review of the financial operations of RGM group reveals that the profit margins were trivial. Just 3.1% in 2012. See Exhibit C. Portions of the 1120 S income tax returns for RGM from 2009 to 2016 are provided as exhibits to demonstrate the business revenues and income. These returns were prepared by a certified public accountant until 2016.  A review of the income tax returns was requested by counsel for Chelsea Gless to assist the reader to determine

the financial benefit received by Chelsea Gless from RMG. See Exhibit G. The returns filed 2009 to 2015 by RMG were prepared by a certified public accountant and the years 2014 and 2015 were audited by the IRS. See Exhibit K. In 2013 gold and silver prices plunged. See Exhibits L and M. Gross income dropped to $20 million in 2013, $9.4 million in 2014 and $11.4 million in 2015. Unfortunately, Chelsea Gless and Mr. Clark attempted to save the business by borrowing funds at ridiculous interest rates from payday lenders. Chelsea Gless obtained a personal home equity loan and an additional loan to pay customers. Exb. N. Unfortunately, she resorted to lying to customers, investment advisors and insurance agents concerning unfilled orders and continued to accept payments for purchases when it was evident that RMG did not have the capital or cash flow to fulfill the orders. Chelsea Gless has pleaded guilty.

The government claims a $3 million fraud. The purpose of a fraud is generally to obtain a personal gain. The RGM business failure was likely inevitable, even if the owners took nothing from the business. The loss to customers was increased by accepting orders that could not reasonably be expected to occur. The payday lender loans were a clear sign of a doomed business model or at least an undercapitalized business. However, this was a legitimate business that failed. There was an economic benefit to many customers and there was no extraordinary personal gain to Chelsea Gless. See Tax Returns and summary by CPA John Sherrick. Exhibit G. The loss was likely increased by the fraudulent conduct of Ms. Gless.

The two-level enhancement for abuse of a position of trust is not appropriate in this matter. Whatever "managerial discretion" Chelsea exercised within RMG is not exercised with respect to the agent or advisor or their customer. It is a case by case

agreed in advance buy or sell transaction of a precious metal for a stated price. The agents and advisors are free to take their orders to any precious metals broker. The transaction either occurs, as many thousands have, or it does not, as in the cases of the persons suffering a loss. The purchase and sale of physical precious metals is not a regulated industry. There is no Federal Deposit Insurance Corporation to regulate or to protect against a business failure. This is not an industry so large or important that Congress will provide a bailout such as to most of the largest banks in this country. Like Lehman Brothers, this business failed and customers were harmed. RMG and Chelsea Gless are not licensed and not required to be licensed by any State or Federal Agency.  She does not need or have a license or certificate to perform these services on behalf of RMG.  She did not give advice concerning the purchase or sale of precious metals.  The advice to buy or sell precious metals and the selection of RMG to accomplished the transactions was almost always the decision by an investment advisor or insurance agent for the customer. Ordinary commercial relationships do not constitute a trust relationship sufficient to invoke the §3B 1.3 enhancement. *U.S. v. Baker,* 200 F.3d 558 (Eight Cir. 2000). As a practical matter, Ms. Gless's involvement with customers was limited to responding to customer's inquires and complaints concerning trades placed by their agents and advisors.

It is nearly impossible that Ms. Gless will ever be able to pay the restitution judgment in full. Ms. Gless hopes that those customer's whose basic needs are affected be compensated first. Title 18 § 3664 provides that the Court may order sufficient information to exercise its discretion in fashioning a restitution order.  A listing of the amounts subject to restitution has been provided to the Court.  A financial affidavit has been provided by Ms. Gless.  Section 3664(f)(2) provides that the Court shall pursuant to section 3572 specify in a restitution order the manner in which and

schedule according to which the restitution is to be paid in consideration of the financial resources and assets of the Defendant, the projected earnings and other income of the Defendant and any financial obligations of the Defendant, including obligations to dependents.  The Court can direct the Defendant to make nominal periodic payments if the Court finds from facts on the record that the economic circumstances of the Defendant do not allow the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments. Ms. Gless requests the Court to direct payments of restitution that will allow her to provide for the needs of her family and provide compensation to those injured.

CHELSEA GLESS

BY:      /s/  John  O.  Moeller_____

JOHN O. MOELLER  AT#0005535

Attorney for Defendant

1503 Brady Street

Davenport, Iowa 52803

Telephone No. 563/323-3014

E-mail: john@johnmoeller.com

CERTIFICATE OF SERVICE:
The undersigned certifies that the foregoing document was served upon all counsel of record by electronic service by filing this document with the Clerk of Court using the ECF system which will send notification to the following.

Rachel Scherle (United States Attorney's Office)

Rachel.scherle@usdoj.gov